# CASES

IN THE

# SUPREME JUDICIAL COURT,

FOR THE

COUNTY OF YORK, APRIL TERM, 1834.

---

## TROTT & al. vs. WARREN.

Where it appeared, that the persons named in an act of incorporation, had held meetings under it, adopted by-laws, chosen officers and done other corporate acts, it was held to be sufficient evidence of the existence of a company capable of taking and holding property, though there was no legal record of the first meeting and the formal acceptance of the charter.

A contract is not valid, made by the *minority* of a committee of a corporation, and not assented to by a majority, nor by the corporation.

Though a sale of goods made fraudulently and without consideration, may be void as to the creditors of the vendor; yet, if prior to their attachment, the goods pass into the hands of a *bona fide* purchaser not conusant of the fraud, and for a valuable consideration, the latter would be entitled to hold.

THIS action was *replevin* for twenty-three boxes of cotton machinery, forty-five yarn beams and eight soap stone rollers, alleged to be of the value of $550.

The defendant pleaded *non cepit*, and also filed a brief statement justifying the taking as a deputy sheriff, on a writ in favor of *Moses Whittier* against *Isaac Wendell* and *George D. Varney*, the property being, as was alleged, that of said *Wendell* and *Varney*, or one of them.

The plaintiffs claimed property through *Isaac Wendell*, who it was admitted, prior to *April* 1, 1828, was sole owner thereof. On that day, said *Wendell* sold the goods replevied, with other property to a large amount, purporting to be of the value of $14,000, to the *Kennebunk Manufacturing Company.* On the

28th of *November*, 1828, said goods were seized as the property of said Company, on an execution in favor of *Jesse* and *Moses Varney*, and were regularly sold at public vendue, *December* 2, 1828, the plaintiffs being the purchasers.

The defendant contested the validity of the sale from *Isaac Wendell* to the Company. To prove it, the plaintiffs produced a written agreement, dated *April* 1, 1828, signed by *Isaac Wendell* on the one part, and *Jesse Varney* and *Abraham Wendell*, as a "purchasing committee," of the other part; by which the said *Isaac Wendell* agreed "to sell and deliver" to the *Kennebunk Manufacturing Company*, and the said Company "agreed on their part to purchase" a certain quantity of machinery, tools, &c. then in the *Hanson factory* at *Dover*, for the sum of $20,000, to be paid in five several equal payments, in six, nine, twelve, fifteen and eighteen months.

On the back of this agreement was the following indorsement, of the same date as the agreement. "Received of the within contract, one picker, ten cards, &c., &c., [being a part of the property described in the contract,] for which there has been paid the said *Wendell* $14,000 in drafts on the Treasurer, at 6, 9, 12, 15, 18 months, with interest after six months.

"*Jesse Varney* — for the Company,
"*Isaac Wendell.*"

The admission of this paper was objected to by the defendant, because it did not appear, that there was such a Company in legal existence; and if there was, that it did not appear that the purchase was made and the memorandum signed by any person or persons thereto authorized by said Company.

To show the existence of such Company, the plaintiffs read an Act passed by the Legislature of this State, *February* 14, 1826, incorporating *Jesse Varney* and others as a Company, by the name of the "*Kennebunk Manufacturing Company*" — and also offered in evidence a book, which *Daniel Sewall, Esq.* testified contained the records of said Company. The records were all in the said *Sewall's* handwriting, although he testified that the doings of the Company, at some of the first meetings, say four or five, were noted on loose papers by other clerks, and that he copied and signed them. He was chosen clerk, *March* 22, 1827,

and was duly sworn, and recorded the doings of that and all subsequent meetings. *Sewall* further testified, that no certificates of shares were ever issued.

It appeared by the testimony of *Horace Porter,* one of the associates, that, the Company was to be formed in the first instance, on condition that eighty shares were subscribed for — that, *Jesse Varney* subscribed twenty-three for himself and friends; and that, the associates suspecting it was not genuine, made an assessment to test it, but nothing was paid in, and the witness took the leaf on which the subscription was written, tore off his own name and a *Mr. Smith's,* and detained the paper — that, the eighty shares were never made up, and that so far, it was all moonshine. It appeared in evidence that subsequently there was a new subscription, and sixty or seventy new shares subscribed for.

It appeared by the records, that on the 22*d* day of *February,* 1827, by-laws were made, by the 2d article of which, officers were to be chosen for one year and until removed or others were chosen in their stead.

"*Article* 5*th.* — The capital stock of the Company shall be divided into 200 shares; all not subscribed for to belong to the Company, but not liable to assessment, nor entitled to the privilege of voting."

"*Article* 10. — The Treasurer shall pay only for such purposes as he shall be ordered by the directors."

*June* 6, 1827, *Samuel Snelling, Jr.* was chosen Treasurer.

*March* 13, 1828, it was "voted that, *Abraham Wendell, Jesse Varney, Daniel Osborne, Abner Jones,* and *Gideon C. Smith* be a committee to purchase machinery."

*March* 29, 1828, *Jesse Varney* was chosen Agent, and *Daniel Osborne* Assistant Agent.

It appeared that no assessments had been made, or moneys paid into the treasury; but it did appear that a store was kept at *Kennebunk* in the name of the Company; that, goods to a considerable amount were purchased and sold in the Company name; that workmen were employed by them, and steel and iron purchased — that, *Jesse Varney* was acting as the agent of the

Company, purchasing goods and employing men — that, *Daniel Osborne* kept the account books, and that *Abner Jones* appeared to be overseer of the joiner work.

There was much other evidence in the case, the reporting of which is rendered unnecessary by the special finding of the jury.

*Parris J.* instructed the jury, that from the evidence in the case, the *Kennebunk Manufacturing Company* was to be considered competent in law to purchase and hold property, and that if they actually purchased this property, it became liable for their debts. That, if a committee was appointed by said Company to purchase machinery, a contract to be valid, must be made or assented to by a majority of such committee; that in this case it was not pretended that the purchase was made in any other manner than through the committee — and inasmuch as but two of the committee, being a minority, had signed the memorandum of agreement of the 1*st* of *April*, the jury would inquire whether the contract had been assented to by a majority, either by parol or otherwise, and if so, the sale would be valid between the parties, and the property in the machinery thereby vested in the Company; but if such contract was not made or assented to by a majority of the committee, the property did not pass, and was not liable for the Company's debts. That, if the sale of the machinery from said *Isaac Wendell* to the Company was fraudulent and not for a valuable consideration, still as between him and the Company, such sale would be valid; but that, the machinery would be liable in the possession of said Company for *Wendell's* debts contracted previous to such sale — but if the machinery had, previous to any attachment by *Wendell's* creditors, passed out of the hands of the Company to a *bona fide* purchaser not conusant of the fraud, and for a valuable consideration, such purchaser would be legally entitled to hold it. That, if the contract between *Isaac Wendell* and *Abraham Wendell*, and *Jesse Varney* was not ratified or assented to, by a majority of the committee, as before specified, then their verdict should be for the defendant; as it also should if the sale was so ratified, provided they found that the sale was without a valuable consideration, and fraudulent as against the creditors of *Isaac Wendell*, and that the plaintiffs were conusant of the fraud. But if they should find

that the contract was ratified or assented to by a majority of the committee and was not fraudulent, or if it was fraudulent, that the plaintiffs were not conusant of the fraud, and that they were *bona fide* purchasers under the Company, for a valuable consideration, then their verdict should be for the plaintiffs.

The jury returned a general verdict for the plaintiffs, and also found specially that there was no other company at *Kennebunk* in 1828, known and called by the name of the *Kennebunk Manufacturing Company*, except that claiming and pretending to act under an Act of incorporation. That the sale from *Isaac Wendell* to the Company was fraudulent — that it was for the purpose of securing the property of *Isaac Wendell* from his creditors, and that, it was not made for a valuable consideration. That *Trott & Bumstead*, the plaintiffs, were innocent purchasers. That a majority of the committee did not, either by parol or otherwise, ratify or assent to the sale of the 1*st* of *April*. That, the judgment in favor of *Jesse* and *Moses Varney*, was not fraudulent, and that *Trott & Bumstead* gave no consideration for the property except the discharge of the judgment of *J. & M. Varney* against the *Kennebunk Manufacturing Company*, of which they were the assignees.

What judgment should be rendered upon the whole case, under the above instructions, was submitted to the consideration of the whole Court.

*J. Shepley*, for the defendant, contended that there was no sufficient evidence of the organization of a Company — a Company capable of taking and holding property. There is no legal evidence of the calling of the first meeting, in pursuance of the directions of the statute. The Clerk made up the records from minutes made by another person, which it was not competent for him to do. The record then, *pro tanto*, is no more evidence than blank paper. *Taylor* v. *Henry*, 2 *Pick*. 402.

If the book produced be not a *record*, it is not evidence of a fact. And the acts of a corporation can only be proved by record. *Moore* v. *Newfield*, 4 *Greenl*. 44 ; *Owings* v. *Speed*, 5 *Wheat*. 420. And in this respect it is immaterial whether the corporation be a party, or whether it be between third parties. *Manning & al.* v. *Gloucester*, 6 *Pick*. 16.

Trott & al. *v.* Warren.

Again, there was no way for the the corporation to vote but by shares. Here, to no legal intent, was stock subscribed, or shares created. It was not done in fact — but whatever was done, was before *Sewall* was Clerk, and there is no legal evidence of it. *Salem Mill Dam Co.* v. *Ropes,* 6 *Pick.* 23 ; *Ex parte Holmes,* 5 *Cowan,* 426.

But if the Company was a corporation duly organized, we still maintain, that there was no purchase by the Company of the property in controversy. The contract could not be binding unless assented to by *a majority* of the committee, which is expressly negatived by the finding of the jury. *Kupfer* v. *First Parish in Augusta,* 12 *Mass.* 189.

What judgment, then, shall be rendered on the whole case ? The general verdict amounts to nothing. It is not the issue between the parties — but the Court, notwithstanding the general verdict, will render such judgment as the law on the whole case would require. *Brewer* v. *Elsworth,* 11 *Pick.* 316.

The judgment here should go for the defendant, because the jury have found facts that show conclusively that the action cannot be maintained.

*J. Holmes* and *D. Goodenow,* for the plaintiffs, contended that it was not necessary for the plaintiffs to show that the Act of incorporation was accepted, and that the Company was duly organized under it. It is sufficient to show that there was a corporation by reputation.

But if more be necessary, the proof has been furnished, the evidence of acceptance of charter, and organization is sufficient. *Chester Glass Co.* v. *Dewey,* 16 *Mass.* 94; *Foster & al.* v. *Essex Bank,* 16 *Mass.* 245; *Proprietors of Canal Bridge* v. *Gordon,* 1 *Pick.* 297.

With regard to other points, they contended that it was the *general duty* of the Agent of the Company to purchase machinery without express authority given for that purpose. And the committee may be considered as having been raised for the purpose of advising and aiding the Agent. But if it were otherwise, and the committee alone were to purchase, it has been done. It is true, the jury have found that a majority of the *committee* did not ratify the contract of purchase — but they have not found that the *Company* did not ratify. And the Company did ratify,

by implication, at least. The jury could have found the property in the plaintiffs only on the ground that the contract was a good one, and had been ratified by the Company, though not by the committee.

The defendant fails in the justification set up, which was that the property was in some one else, and the plaintiffs are therefore entitled to judgment on the general verdict.

MELLEN C. J. at the ensuing *April* term in *Cumberland,* delivered the opinion of the Court.

This case presents several questions for consideration; and as we are all satisfied that the verdict must be set aside and a new trial granted, it may be useful to the parties for the Court to express their opinion as to all the points which have been the subjects of examination. It appears that on the first of *April,* 1828, *Isaac Wendell* was the sole owner of the property replevied and in controversy in this action. The *first* question in the order of events is, whether by the alleged agreement between him and the *Kennebunk Manufacturing Company,* of the said first of *April,* 1828, the property in dispute was legally conveyed to, and vested in said Company. As the plaintiffs claim under a sale of said property, on execution against said Company, as the property of the Company, the above mentioned question is one of vital importance to them. Unless they can substantiate *their* title to the goods and chattels replevied, it is of no importance to examine the rights of the defendant.

The *first* objection urged against the title of the plaintiffs is, that the *Kennebunk Manufacturing Company,* on the said first of *April,* were not a corporation, capable of contracting for the property in dispute, and of *taking* and *holding* the same; inasmuch as it had not then been organized completely, nor all the shares subscribed for. The Court are of opinion that the facts stated in the report of the Judge shew the existence of the Company as a corporation, capable of taking and holding property. In addition to the authorities cited by the counsel for the plaintiffs to this point, we would merely refer to the act establishing *Bowdoin College,* which contains a grant to the corporation of certain lands, which, of course, preceded the organization under the charter. The case of the *Salem Mill-dam Corporation,* 6

Trott & al. *v.* Warren.

*Pick.* 23, was a question as to the legality of an assessment, which depended on the peculiar language of the Act. In the case before us, many officers had been chosen and important corporate acts had been done, to all of which we refer without a *re-statement* of them in this opinion.

The next question is, whether any contract was made by the corporation with *Wendell*, by means of which the property in question was conveyed to the corporation. The only evidence relied on of such sale is the written contract or agreement of *April* 1, 1828. This was signed by *Wendell* and by only *two* of the purchasing committee, being a *minority* — and the jury have expressly found that *the committee* did not ratify or assent to the sale of the first of *April*; or, as the Judge has certified, that a *majority* did not by *parol* or *otherwise*. This fact, thus found, is decisive against the plaintiffs, in respect to their right to retain the verdict. We are of opinion that the instruction of the Judge was correct as to the question of alleged fraud in the supposed sale, in respect to the creditors of *Wendell*, as also in respect to innocent purchasers of, or under the Company, for a valuable consideration and *bona fide*, and without notice of fraud in a prior sale. It has been contended that there are two questions to which the attention of the Court and jury were not particularly directed at the trial, and in respect to which the jury have expressed no opinion. In the first place, it is said there are facts in the case, shewing that the *Company* ratified, or such as would authorize a jury to *infer* a ratification by the *Company*, of the contract of *April* 1, 1828, as a sale to them of the property in question : or if not, that there is evidence of a *parol* contract of sale of property to the amount of $14,000 : — but to which the attention of the Court and Jury was never directed. These may constitute subjects of interesting inquiry on another trial, and on which the jury may pronounce their verdict; but as the *written* agreement of *April* 1, 1828, and its legal character, was the only evidence of sale relied on, and as this agreement was never ratified by a majority of the committee in any manner, the consequence is, that the verdict which was for the plaintiffs, is contrary to law and inconsistent with itself: of course it cannot stand.

*Verdict set aside and new trial granted.*